UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOBILE NOW, INC.,

      Plaintiff/Counter-Defendant

      Case No. 1:19-CV-5241

v.

      Hon. Jeffrey Cole

BRIGHTSTAR US, LLC f/k/a
BRIGHTSTAR US, INC.,

      Defendant/Counter-Plaintiff.

## [PROPOSED] STIPULATED ORDER REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

This Stipulated Order Regarding the Production of Documents and Electronically Stored Information shall govern the parties' document productions in the above-captioned case. The parties shall take reasonable steps to comply with this Order. To the extent any party identifies issues that it contends make compliance with any of the provisions of this Order impossible or overly burdensome, the parties shall meet and confer regarding an appropriate and reasonable alternative. Plaintiff Mobile Now, Inc. ("Plaintiff") and Defendant Brightstar US, LLC f/k/a Brightstar US, Inc. ("Defendant") stipulate and agree to the following Order, without waiving or intending to waive any rights, claims or arguments with respect to the sufficiency of any responses to outstanding discovery requests or productions of hard copy documents or electronically stored information by the Parties.

    **C.**   **Definitions**

    1.   "Electronically stored information" or "ESI" shall include all electronic files, documents, data and information covered under the Federal Rules of Civil Procedure.

2. "MIDPP" shall refer to the Mandatory Initial Discovery Pilot Program in the Northern District of Illinois, as amended December 1, 2018 and available online here.

3. "Parties" shall refer to the parties in the above-captioned litigation, Plaintiff and Defendant, collectively.

4. "Producing Party" shall refer to the party producing documents and ESI in response to a discovery request propounded by another party.

5. "Receiving Party" shall refer to the party receiving documents and ESI in response to a discovery request propounded by the Receiving Party.

**B. Preservation Guidelines**

1. The parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.

2. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

3. By preserving documents or ESI for the purpose of this Action, the parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

4. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    e. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    f. Server, system or network logs.

    g. Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

    h. Any other categories of ESI the parties agree need not be preserved.

**C. General Search Guidelines**

1. As soon as practicable, the Producing Party shall provide to the Receiving Party a list of individuals who the Producing Party believes would likely have hard copy documents and ESI within the scope of necessary production in light of the requirements of the MIDPP and any document requests. These individuals shall be the focus of the Producing Party's efforts to collect, search, and review hard copy documents and ESI (with these custodians identified as the "Key Custodians").

2. The Parties agree to take reasonable steps to identify the sources of potentially responsive hard copy documents and ESI maintained or created by each Key Custodian for collection and search, which might include, for a specific Key Custodian, hard copy document

files, e-mail repositories, folders within shared network drives in which each Key Custodian places or maintains documents, and/or folders within workstations and/or laptop hard drives utilized by that Key Custodian.

3. To narrow the set of scanned hard copy documents and ESI to be reviewed for potential production in response to discovery requests, the Producing Party may employ keyword screening, date filters, e-mail thread filtering and/or other forms of technology-assisted review to collect or otherwise identify potentially responsive scanned hard copy documents and ESI. Each Producing Party has the right to craft and identify search terms, utilize predictive coding, apply filters, apply email threading, or apply other analytics to identify and review potentially responsive ESI. The Producing Party will provide to the Requesting Party as soon as practicable a list of search terms (including related Boolean, connectors or operators, and wildcard characters), date ranges, and any other limitations, culling techniques, and/or technologies employed in order to narrow or focus the collection and/or identification of potentially responsive scanned hard copy documents and ESI for review.

4. To the extent any disputes arise regarding these general search guidelines, the Parties shall meet and confer to resolve such disputes and seek assistance from the Court should they be unable come to a resolution.

**D. Review and Production**

1. The Parties agree that, after identifying potentially responsive scanned hard copy documents and ESI, the Producing Party shall review and produce any responsive scanned hard copy documents and ESI not otherwise exempted from disclosure for reasons including, but not limited to, privilege, other protections, or objections. The Producing Party reserves all rights to object to the production of any scanned hard copy documents and/or ESI.

2. If production of specific scanned hard copy documents and/or ESI in the formats outlined in this Order is deemed by the Producing Party to be not feasible because of undue cost or burden, then the Producing Party shall meet and confer with the Receiving Party regarding the options for production of such scanned hard copy documents and/or ESI, if agreement cannot be reached, then the Producing Party may ask the Court to resolve the issue.

3. Subject to the other provisions of this Stipulation, the Parties agree to produce metadata related to each electronic document (to the extent such metadata is available and readily extractable from each electronic document), with the scope of this metadata outlined in the attached Appendix A.

4. The Parties agree to produce attributes related to each scanned hard copy document, the scope of these attributes outlined in the attached Appendix B.

**E.    Timing of Production**

1. The Parties agree to use good faith efforts to produce responsive scanned hard copy documents and ESI within a reasonable time. Should the Parties not reach agreement on deadlines for productions, the Parties will seek assistance from the Court to resolve the issue.

**F.    Format of Productions**

1. Unless specifically stated otherwise in this Stipulation, all scanned hard copy documents and ESI produced by the Parties (each a "Production Document") shall be as follows:

   a. All Production Documents shall be produced in imaged format as black and white Group 4 single page TIFF files, with a resolution of 300 DPI, page size shall be 8.5 x 11 inches unless, in the reasonable judgment of the Producing Party, a Production Document requires a different page size, and original document orientation shall be maintained (i.e. portrait to portrait and landscape to landscape). The imaged Production Documents shall be contained in a folder

called "IMAGES." Composition of Production Documents shall be maintained through output folders, and Production Documents shall not be split across multiple folders.

b.  If, in the reasonable judgment of the Producing Party, a color copy of a Production Document is necessary to convey the relevant and responsive information, then that document may be produced as JPG (JPEG) image file or, per agreement of the Parties, as another image file type. Upon review of the Producing Party's production, the Receiving Party may request that color copies of a reasonable number of Production Documents be provided where color is necessary to convey the relevant and responsive information within those Production Documents.

c.  Extracted Text (or OCR if the document has no available extracted text or is redacted) must be supplied for Production Documents as document level, multi-page text files. The text files should reside in the same directory as the relevant images and should be named with the corresponding beginning Bates numbers of the Production Documents.

d.  The Production Documents shall be accompanied by an .OPT image cross reference file provided in a folder named "DATA". This load file shall contain the full path and related bates number for each image as follows. The OPT should also include the standard OPT format document composition notation.[1]

---

[1] For example:
TEST-T00000001,TEST_001,\\IMAGES\TEST_001\IMAGES\001\TEST-T00000001.tif,Y,,,2
TEST-T00000002,TEST_001,\\IMAGES\TEST_001\IMAGES\001\TEST-T00000002.tif,,,,

  e. The files shall be accompanied by a .DAT text file (provided in a folder named "DATA") that includes the delimited fields defined in Appendices A (for ESI) and B (for scanned hard copy documents). The DAT file delimiters will be:

```
Comma    ¶ (020)
Quote    þ (254)
Newline  ® (174)
```

In multi-value fields, multiple values in a single field should be separated by semi-colons (;).

  f. For scanned hard copy documents, the Parties will produce images of the scanned hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents, and with information that identifies the holder (or container) structure, to the extent such structure exists.

  2. The parent-child relationships (e.g., the association between an attachment and its parent document) of Production Documents that have been maintained in the ordinary course of business shall be preserved. For example, if a Party is producing an email with embedded attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email.

  3. For Production Documents produced in TIFF, JPEG, or other imaged formats, the Producing Party shall electronically "burn" a legible, unique Bates number onto each page of the

Production Documents. The Bates number shall: (i) identify the Producing Party; (ii) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (iii) contain only alphanumeric characters (and no special characters or embedded spaces); and (iv) be sequential within a given document. If the Bates number conceals, interferes with, or otherwise obscures any content in the original copy of the Production Document, the Producing Party, at the request of the Receiving Party, shall produce a copy that is not so obscured.

4. For Production Documents produced in TIFF format that are subject to a claim of protection from disclosure under any confidentiality order entered in this matter, the Producing Party shall electronically "burn" the appropriate confidentiality designation onto each page of the Production Document. If the designation conceals, interferes with or otherwise obscures any content in the original copy of the Production Document, the Producing Party, at the request of the Receiving Party, shall produce a copy that is not so obscured.

G. **Exceptions to the Production Format**

1. Excel™ and other types of spreadsheets are often dynamic in nature and may not be conducive to image format; therefore, the Parties shall produce Excel™ and other spreadsheets in the native application format. Any Excel™ or other spreadsheet that is produced in native format must have a corresponding placeholder TIFF image that bears the statement "FILE PROVIDED NATIVELY" and indicates its Bates number, its relationship to other documents in the production, and its appropriate confidentiality designation. Any Excel™ or other spreadsheet that is produced in native format must also reside in the same directory as the relevant images and text. Metadata corresponding to the produced native file should also be provided in the DAT file (as described in Appendix A) and associated with both the placeholder image and the produced native file. The native file shall be named by using the same Bates number identified on the placeholder TIFF image. Any Excel™ or other spreadsheets that

require redaction will be produced in TIFF format or, per agreement of the Parties, as another image file type.

    2.    The Parties agree that the Producing Party may produce PowerPoint™ files native format where these files are deemed not to be conducive to image format. Any PowerPoint™ file that is produced in native format must have a corresponding placeholder TIFF image that bears the statement "FILE PROVIDED NATIVELY" and indicates its Bates number, its relationship to other documents in the production, and its appropriate confidentiality designation. Any PowerPoint™ file that is produced in native format must also reside in the same directory as the relevant images and text. Metadata corresponding to the produced native file should also be provided in the DAT file (as described in Appendix A) and associated with both the placeholder image and the produced native file. The native file shall be named by using the same Bates number identified on the placeholder TIFF image. Any PowerPoint™ file that requires redaction will be produced in TIFF format or, per agreement of the Parties, as another image file type.

    3.    Certain types of databases and/or their associated software may be dynamic in nature and will often contain information that is not responsive and/or not reasonable or proportionate subjects of discovery in this action. The Parties may request that responsive information from databases and/or their associated software be identified through appropriate queries, extracted, and produced in an appropriate alternate electronic format, such as a report or data table. To the extent that relevant and responsive reports or data tables derived from a database and/or its associated software were also maintained in static form (e.g. as a PDF or a hard copy in a file), those documents may be produced as static images consistent with the specifications for scanned hard copy documents. The Parties agree the same information need

not be produced in multiple or different formats. To the extent that the Parties identify dynamic databases and/or their associated software that contain responsive data or information that cannot be produced in any format specified in this Electronic Discovery Stipulation, the Parties agree to meet and confer to determine a practicable means of production of such data or information.

    4.    Certain types of ESI files, such as system, program, video, and sound files, may not be amenable to conversion into anything meaningful or reviewable in TIFF format. Where not otherwise exempted from disclosure for reasons including, but not limited to, privilege, other protections, or objections, such files shall be reflected in production through use of a placeholder TIFF image. If the Receiving Party can show a legitimate need for information contained in these files, it may request that these files be produced in native format. Parties shall then meet and confer to discuss such requests for production of specific individual ESI files in native format.

    5.    If ESI is corrupted, password protected, encrypted, or not readable by the Producing Party, and the Producing Party determines that such file is likely to contain potentially relevant information, the Producing Party shall take reasonable and proportionate efforts to access the file and make it available for search, review, and potential production.

### H. Other Issues Relating to Production

    1.    ESI shall be de-duplicated (either globally or by custodian) prior to review in a manner that does not break up document families (such as e-mails and attachments), but the original ESI shall be preserved. ESI duplicates shall be identified by using standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches only.

    2.    Email may also be suppressed from review and/or production through use of e-mail threading tools, which identify and exclude lesser-included components of longer e-mail threads.

3.      Any other methodology for identification of duplicates must be discussed with the Receiving Party and approved in writing before implementation.

4.      Productions may be delivered to the Receiving Party on digital media (with the production files encrypted on the media and/or the media itself encrypted) or via a secure internet transfer tool (such as an SFTP site or ShareFile). Productions are understood to be delivered when made available for download or when physically delivered on physical media. Each production will be labeled with the Bates range contained therein and a volume number.

I.      **Issues Related to Privilege and Redaction**

1.      Each Party shall take reasonable steps to identify and exclude privileged, work-product protected, and irrelevant information from scanned hard copy documents and ESI prior to production. Responsive scanned hard copy documents and/or ESI withheld, or Production Documents redacted, on privilege and work-product protection grounds will be identified in a privilege log that complies with Rule 26(b)(5) of the Federal Rules of Civil Procedure and which is served on the opposing party within a reasonable time after production. In addition, so long as one copy of a document is produced or identified on a privilege log, identical duplicates of that document need not be produced or logged.

2.      Privilege logs prepared for this action shall not be required to reflect any privileged correspondence between any party and its counsel or among any party's counsel regarding the defense or prosecution of this case. Likewise, privilege prepared for this action shall not be required to reflect any privileged documents created after July 17, 2019, which is the date this action was commenced by Brightstar's filing of a Demand for Arbitration.

3.      As provided under the Agreed Confidentiality Order in place for this action, if information subject to a claim of privilege or work-product protection is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver

of, or estoppel as to, any claim of privilege or work-product protection for such information. Privilege logs shall indicate for redacted Production Documents, whether redacted for privilege, work-production protection, or lack of relevance, the pages or sections on which the redaction are located.

J. **Production Format Shall Not Alter Authenticity, Admissibility or Privilege Status**

1. No Party shall object that ESI produced pursuant to this Stipulation is not authentic based upon the file naming conventions required in this Stipulation or by virtue of the ESI having been converted to TIFF. The parties otherwise reserve all rights regarding their ability to object to the authenticity of documents.

2. Nothing in this Stipulation shall be construed to affect in any way the rights of any Party to object to the admissibility of any materials into evidence at the trial of this action.

3. Nothing in this Stipulation, including any production under this Stipulation, shall constitute a waiver by any Party of any claim or privilege or other protection from discovery.

J. **Application of the Federal Rules of Civil Procedure and the MIDPP**

1. This Stipulation is not intended to function in lieu of Federal Rule of Civil Procedure 34 or any other applicable Federal Rule of Civil Procedure, Federal Rule of Evidence, or Local Civil Rule for the Northern District of Illinois.

2. This Stipulation is intended to supplement, and not replace, the MIDPP. To the extent there is any provision of this Stipulation that is in conflict with the MIDPP, the MIDPP governs.

3. Disclosures and productions made pursuant to this Order are also subject to all orders entered by this Court in this action. All parties shall supplement their disclosures and

productions in accordance with Federal Rules of Civil Procedure, the Local Rules of this Court, and any discovery-related orders entered by the Court.

### K.     Implementation and Modification

1.     The Parties agree to negotiate in good faith with regard to the implementation of this Order, and the Parties will jointly seek assistance from the Court to resolve disputes if an agreement cannot be reached.

2.     This Order may be modified by mutual written agreement of the parties or by the Court.

IT IS SO ORDERED.

DATED: MARCH __4__, 2020

AND AGREED: MARCH __ 2020.

_____
HONORABLE JEFFREY COLE
UNITED STATES MAGISTRATE JUDGE

_____

Meghan C. Dalton
ARDC No. 6308838
meghan.dalton@clydeco.us
James J. Sanders
ARDC No. 6290660
CLYDE & CO US LLP
55 W. Monroe Street
Suite 3000
Chicago, IL 60603
T: (312) 635-7000
F: (312) 635-6950

**COUNSEL FOR MOBILE NOW, INC.**

_____

Abram I. Moore
ARDC No. 6278871
abe.moore@klgates.com
**K&L GATES LLP**
70 W. Madison, Suite 3100
Chicago, IL 60602
T: (312) 372-1121
F: (312) 827-8175

Jeffrey T. Kucera
Florida Bar No. 0068233
jeffrey.kucera@klgates.com
Javier Roldán Cora
Florida Bar No. 1010311
javier.roldancora@klgates.com
**K&L GATES LLP**
200 South Biscayne Boulevard
Suite 3900
Miami, Florida 33131
T: (305) 539-3300
F: (305) 358-7095

Secondary:
litigation.docketing@klgates.com

**COUNSEL FOR BRIGHTSTAR US, LLC**

## **APPENDIX A**

| Metadata Fields | Field Descriptions | Sample Values |
|---|---|---|
| BEGDOC | Bates number for the first page of the document | ABC-0000001 |
| ENDDOC | Bates number for the last page of the document | ABC-0000002 |
| BEGATT | Bates number for the first page of parent document. | ABC-0000001 |
| ENDATT | Bates number for the last page of last attachment. | ABC-0000005 |
| PAGECOUNT | Number of printed pages of the document | 2 |
| CUSTODIAN | Custodian name produced in format: Last name, First name. | Smith, Jane; Taylor, Michael |
| POD | Indicates if the document has been designated as "Confidential" or another designation pursuant to any applicable Protective Order | Confidential |
| REDACTED | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for non-redacted documents. | Yes |
| FILENAME | File name of document **(NON-E-MAIL ONLY)** | XYZ Draft Contract |
| SUBJECT | Subject line of email **(E-MAIL ONLY)** | RE: ABC Draft Contract |
| TITLE | File name of document **(NON-E-MAIL ONLY)** or subject line of email **(E-MAIL ONLY)** | XYZ Draft Contract |
| DOCTITLE | The Title property of a document. | ABC Draft Contract |
| DATECREATED | Date created, in MM/DD/YYYY format **(NON-E-MAIL ONLY)** | 01/01/2001 |
| DATELASTMOD | Date last modified, in MM/DD/YYYY format **(NON-E-MAIL ONLY)** | 01/01/2001 |
| DATESENT | Email sent date, in MM/DD/YYYY format **(E-MAIL ONLY)** | 01/01/2001 |

| Metadata Fields | Field Descriptions | Sample Values |
|---|---|---|
| TIMESENT | Email sent time, in 24 hour format (E-MAIL ONLY) | 18:11:01 |
| SENTMODDATE | Email sent time, in 24 hour format (E-MAIL ONLY) or date last modified, in MM/DD/YYYY format (NON-E-MAIL ONLY) | 01/01/2001 |
| SENTMODDATE_FAMILY | SENTMODDATE of parent, populated for all child documents in family | 01/01/2001 |
| DATERECEIVED | Email received date, in MM/DD/YYYY format (E-MAIL ONLY) | 01/01/2001 |
| TIMERECEIVED | Email received time, in 24 hour format (E-MAIL ONLY) | 18:11:01 |
| AUTHOR | The Author property of a document (NON-E-MAIL ONLY) | John Doe |
| TO | All SMTP addresses of email recipients (E-MAIL ONLY) [MULTI-VALUE FIELD] | Larry.murphy@email.com; russ.carr@gmail.com |
| FROM | SMTP address of email author (E-MAIL ONLY) | Bart.cole@email.com |
| CC | All SMTP address of email "CC" recipients (E-MAIL ONLY) [MULTI-VALUE FIELD] | Jim.James@gmail.com; bjones@yahoo.com |
| BCC | All SMTP address of email "BCC" recipients (E-MAIL ONLY) [MULTI-VALUE FIELD] | mjones@gmail.com |
| ATTACH_TITLES | File name(s) of document(s) (NON-E-MAIL ONLY) or subject line(s) of email(s) (E-MAIL ONLY) that are attachments, populated for parent documents only [MULTI-VALUE FIELD] | Filename.doc; filename2.doc |
| CONVERSATION_INDEX | The conversation index of an email thread | |
| RECORDTYPE | ESI or Scanned Hard Copy | ESI |
| DOCTYPE | The file type extension. | .doc |

| Metadata Fields | Field Descriptions | Sample Values |
|---|---|---|
| MD5HASH | MD5 Hash value of original file | |
| FILEPATH | The directory structure of the original file. | C:\My Documents\ letter.doc |
| FILESIZE | Size of native ESI file, in bytes | 10711 |
| NATIVE_LINK | The relative path to a produced native document | \IMAGES\TEST-T00000001.xlsx |
| TEXT_LINK | The relative path to the accompanying text file (either extracted text or OCR text) | \IMAGES\TEST-T00000001.txt |
| PRODVOL | The production number or reference from the production | PROD001 |

## APPENDIX B

| Attribute Fields | Field Descriptions | Sample Values |
|---|---|---|
| BEGDOC | Bates number for the first page of the document | ABC-0000001 |
| ENDDOC | Bates number for the last page of the document | ABC-0000002 |
| BEGATT | Bates number for the first page of parent document. | ABC-0000001 |
| ENDATT | Bates number for the last page of last attachment. | ABC-0000005 |
| PAGECOUNT | Number of printed pages of the document | 2 |
| CUSTODIAN | Custodian name produced in format: Last name, First name. | Smith, Jane; Taylor, Michael |
| POD | Indicates if the document has been designated as "Confidential" or another designation pursuant to any applicable Protective Order | Confidential |
| REDACTED | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for non-redacted documents. | Yes |
| RECORDTYPE | ESI or Scanned Hard Copy | Scanned Hard Copy |
| TEXT_LINK | The relative path to the accompanying OCR text file | \IMAGES\TEST-T00000001.txt |
| PRODVOL | The production number or reference from the production | PROD001 |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOBILE NOW, INC.,

        Plaintiff/Counter-Defendant

                                      Case No. 1:19-CV-5241

v.

                                      Hon. Jorge Alonso

BRIGHTSTAR US, LLC f/k/a
BRIGHTSTAR US, INC.,

        Defendant/Counter-Plaintiff.
_____/

**ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND**

        The undersigned hereby acknowledges that he/she has read the Confidentiality Order dated _____ in the above-captioned action and attached hereto, understands the terms thereof, and agrees to be bound by its terms. The undersigned submits to the jurisdiction of the United States District Court for the Northern District of Illinois in matters relating to the Confidentiality Order and understands that the terms of the Confidentiality Order obligate him/her to use materials designated as Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern.

        The undersigned acknowledges that violation of the Confidentiality Order may result in penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address:    _____

                                            _____

                                            _____

Signature: _____    Date: _____

4852-4702-0213, v. 1